UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-81483-CIV-MARRA

JAMES D. SALLAH, not individually
but solely in his capacity as Corporate
Monitor for OM GLOBAL INVESTMENT
FUND LLC and OM GLOBAL LP,

      Plaintiff,

vs.

BGT CONSULTING, LLC d/b/a
BGT FUND ADMINISTRATION,

      Defendant.
_____/

## ORDER AND OPINION ON MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Defendants' Motion to Dismiss Plaintiff's

Complaint [DE 17], and Defendant BGT Consulting, LLC's Request for Hearing on its

Motion to Dismiss [DE 31]. The Court has carefully considered all relevant filings and

is otherwise fully advised in the premises. The parties were granted leave to exceed

the page limitations for their motion and response. No reply was filed.

## Background and Factual Allegations

Om Global Investment Fund LLC and OM Global LP[1] (collectively, "OM Global")

was a hedge fund founded, controlled and operated by Gignesh Movalia ("Movalia") in

late 2009. Complaint ("Compl.") ¶ 15. On September 27, 2013, the Securities and

Exchange Commission ("SEC") sued Movalia in a case styled *Securities & Exchange*

_____

[1] OM Global LP was the continuation of OM Global Investment Fund LLC.
Compl. ¶ 9.

*Comm'n v. OM Investment Mgmt. LLC, Gignesh Movalia and Edwin V. Gaw,* Case No. 13-CV-23486-Martinez, in the Southern District of Florida. Compl. ¶ 56. The SEC alleged that Movalia violated federal securities laws, including violations of the Securities Act of 1933, Rule 10b-5 of the Securities Exchange Act of 1934, the Investment Advisers Act of 1940, and the Investment Company Act of 1940. Compl. ¶ 57.

The Fraud Section of the Criminal Division of the U.S. Department of Justice and the U.S. Attorney's Office for the Middle District of Florida also filed criminal charges against Movalia relating to OM Global. *See United States of America v. Gignesh Movalia,* Case No. 8:15-CR-244-T-23 AEP. Compl. ¶ 59. Movalia pled guilty to one count of adviser's fraud in violation of 15 U.S.C. § 80b-6. Compl. ¶ 60. Movalia was sentenced to 18 months in prison, three years of supervised release and he was ordered to pay $5,394,419 in restitution. Compl. ¶ 61.

This action is brought pursuant to the Agreed Order Granting Plaintiff's Unopposed Motion for Appointment of Corporate Monitor dated May 29, 2013, and the Agreed Order Granting the Corporate Monitor's Emergency Motion to Expand Corporate Monitorship over OM Global LP dated August 17, 2013 (collectively, the "Appointment Orders"), issued by Judge Daryl E. Trawick in the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida, in *Chirag Amin. v. Gignesh Movalia and OM Global Investment Fund LLC,* Case No. 13-18620 CA 13 (the "Investor

Action").  The Appointment Orders appointed a Corporate Monitor,[2] among other

things, to marshal OM Global's assets for the benefit of its investors who are currently

owed a significant amount of money.  Compl. ¶ 1.

---

[2]  As a "relatively recent law-enforcement innovation[]," a corporate "monitor is an independent third-party, not an employee or agent of the corporation or of the Government."  Vikramaditya Khanna & Timothy L. Dickinson, *The Corporate Monitor: The New Corporate Czar?*, 105 Mich. L. Rev. 1713, 1715 (June 2007); Louis M. Brown, *et al.*, Standards for Corporate Monitors under Deferred and Non-Prosecution Agreements, The Legal Audit: Corporate Internal Investigations, § 2:25.60 (August 2016).  "Corporate monitors are appointed as part of a negotiated settlement before judgment between a firm and a governmental enforcement agency.  These settlements are termed Deferred Prosecution Agreements or Non-Prosecution Agreements. . .  The monitor's range of influence in these agreements may be limited to only compliance issues or may extend more broadly to many (or all) aspects of the firm's operations."  Vikramaditya Khanna & Timothy L. Dickinson, *The Corporate Monitor: The New Corporate Czar?*, 105 Mich. L. Rev. 1713, 1714-1716 (June 2007) (discussing the powers and fiduciary duties of corporate monitors); *see, also*, Alistaire Bambach, *The SEC in Bankruptcy: Past and Present*, 18 Am. Bankr. Inst. L. Rev. 607, 611 (Winter 2010) ("A corporate monitor is an example of a court-appointed fiduciary, with as much legitimacy as a receiver and bankruptcy trustee.").  "In general, standards issued by the Department of Justice indicate that corporate monitors should generally be used only where there is a special need for outside corporate oversight.  For example, the standards point out that 'it may be appropriate to use a monitor where a company does not have an effective internal compliance program, or where it needs to establish necessary internal controls.'  Provisions for corporate monitors in corporate deferred and non-prosecution agreements, include provisions defining the scope of duties of such monitors . . ."  Louis M. Brown, *et al.*, Standards for Corporate Monitors under Deferred and Non-Prosecution Agreements, The Legal Audit: Corporate Internal Investigations, § 2:25.60 (August 2016).  A few recent cases which have involved the appointment and use of corporate monitors include *United States Commodity Futures Trading Com'n v. Hunter Wise Commodities, LLC*, 2013 WL 718503, at *3 (S.D. Fla. 2013); *United States Commodity Futures Trading Com'n v. International Monetary Metals, Inc.*, 2016 WL 8256852, at *1 (S.D. Fla. 2016); *United States Commodity Futures Trading Com'n v. Mintco LLC*, 2016 WL 3944098, at *3 (S.D. Fla. 2016).

In this case, the Corporate Monitor ("CM") seeks to obtain a money judgment against the hedge fund's administrator, defendant BGT Consulting, LLC, d/b/a BGT Fund Administration ("BGT") for breaches of fiduciary duties, aiding and abetting breaches of fiduciary duties, and negligence.  Compl. ¶ 2.  BGT moves to dismiss the Complaint with prejudice pursuant to Rules of Civil Procedure 12(b)(1) and 12(b)(6).

BGT was the fund administrator for OM Global from 2009 to the CM's appointment in 2013, when the CM terminated the engagement.  Compl. ¶ 17.  OM Global retained BGT in or around November 2009 to provide ordinary bookkeeping services, which included the preparation of net asset value statements based upon information provided by OM Global, including monthly reports, balance sheets, income statements, and month-end capital reports.  Compl. ¶ 18.  BGT ceased providing these types of services in or around the middle of 2011.  Compl. ¶ 20.  This occurred when, in 2011, Movalia changed the focus of the fund to solicit investors by representing he had access to pre-Initial Public Offering ("IPO") shares of Facebook, Inc. ("Facebook").[3]

As such, the new services BGT's began to provide in 2011 were the result of the shift in OM Global's investment purpose to secure and offer investors pre-IPO shares of Facebook.  BGT's Facebook related services were not contemplated and covered by the initial engagement from 2009, yet BGT agreed to provide the

---

[3]  Facebook went public in May 2012.  Compl. ¶ 21.

Facebook related services.[4]  Compl. ¶ 22.  From 2011 through early 2013, the

Facebook related services that BGT provided to OM Global included:

    a.    repeated, independent investigation, inspection, analysis and/or verification of Movalia's securing certain pre-IPO shares of Facebook from third parties;

    b.    repeated, independent investigation, inspection, analysis and/or verification of countless investors' investments in pre-IPO shares of Facebook, including in which pre-IPO batches each investor belonged;

    c.    repeated, independent investigation into and conclusions of various "discrepancies," irregularities, differences and/or unaccounted-for transactions with countless investors' investments in pre-IPO shares of Facebook;

    d.    repeated, independent investigation into and questions to Movalia of various "discrepancies," irregularities, differences and/or unaccounted-for transactions with countless investors' investments in pre-IPO shares of Facebook;

    e.    repeated, independent investigation into and questions to Movalia regarding investment strategy and decisions, fund reporting, fund activities, bank and brokerage accounts, and timing of and payments for an audit;

    f.    repeatedly and independently seeking information from and corresponding with third-party brokers and banks regarding fund activities and the ability to access fund operations;

    g.    repeatedly and independently computing, adjusting, accounting for, updating, reconciling, and/or correcting Facebook and investors'

---

[4]  The Engagement Letter expressly states that BGT could provide to OM Global additional services not contemplated by the Engagement Letter.  Compl. ¶ 19.  The Engagement Letter between Movalia and BGT was not attached to the Complaint but was attached to the Motion to Dismiss.  DE 17-1.  It is referenced in and central to the complaint, it is not in dispute, and the CM has no objection to the Court considering it.  DE 26 at 6.

investment data provided by Movalia;

h.   supervision of and advice on fund activities, such as structuring and
     accomplishing the loan of $300,000 from the commingled trading
     ConvergEx account to an investor whose investment was at the time
     purportedly locked-up in pre-IPO Facebook shares;

i.   repeatedly gaining the Fund's trust based on BGT's purported expertise
     and skill, and expectation that the Fund would rely on its services;

j.   repeatedly assuming responsibility for all of the above activities; and

k.   corresponded with investors regarding due diligence inquiries or other
     questions.

Compl. ¶ 23.  The CM alleges that such services performed by BGT as to the Facebook

transactions were not mere robotic, administrative, bookkeeping, nondiscretionary

services and functions, but rather were discretionary services and functions in which

BGT owed duties, including fiduciary duties, to the fund.  Compl. ¶ 24.

By 2012, Movalia had raised more than $14 million from investors for the sole

purpose of investing their money in pre-IPO Facebook shares which he represented to

investors he had secured.  Compl. ¶ 28.  Although Movalia accepted at least $14

million from investors for investing in pre-IPO shares of Facebook, he secured no more

than $4,218,396 of pre-IPO shares of Facebook to offer investors during the fund's

life.  Compl. ¶ 29.  Therefore, Movalia kept accepting millions of dollars more from

investors, despite not having enough pre-IPO Facebook shares to offer investors.

Compl. ¶ 30.  When Facebook began trading post-IPO, Movalia actively traded

Facebook stock and lost millions of dollars when no trading was to occur per Movalia's

promise to investors.  Compl. ¶¶ 31-32.  The Complaint continues to articulate

multiple improper and fraudulent acts performed by Movalia.

BGT asserts that the CM lacks standing to sue for losses allegedly suffered by

the investors and separately moves to dismiss all claims as a matter of law.  BGT also

argues that the Complaint is barred by the doctrines of *in pari delicto* and the

economic loss rule.

## STANDARD OF REVIEW

### Standing

"Because standing is jurisdictional, a dismissal for lack of standing has the

same effect as a dismissal for lack of subject matter jurisdiction under [Rule]

12(b)(1)."  *Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524

F.3d 1229, 1232 (11th Cir. 2008) (alteration added; internal quotation marks and

citation omitted).  When a defendant challenges a court's subject matter jurisdiction

under Rule 12(b)(1), the challenge may be either facial or factual.  *See Lawrence v.

Dunbar*, 929 F.2d 1525, 1528-29 (11th Cir. 1990).  Like a Rule 12(b)(6) motion, "[a]

'facial attack' on the complaint requires the court merely to look and see if plaintiff

has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in

[the] complaint are taken as true for the purposes of the motion."  *Menchaca v.

Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980) (alterations added) (citing

*Mortensen v. First Fed. Sav. & Loan Assn.*, 549 F.2d 884, 891 (3d Cir. 1977)).  Factual

attacks are different in that they "challenge[ ] the existence of subject matter

jurisdiction in fact, irrespective of the pleadings, and matters outside of the pleadings, such as testimony and affidavits, are considered." *Id*. (alteration added). Defendant makes a facial attack with regard to standing.

## Failure to State a Claim

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8's pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint that provides "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is not adequate to survive a Rule 12(b)(6) motion to dismiss. *Twombly*, 550 U.S. at 555. Rather, "[t]o survive … a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A facially plausible claim must allege facts that are more than merely possible. *Iqbal*, 556 U.S. at 678. Factual allegations that are "'merely consistent with' a defendant's liability" fall short of being facially plausible. *Id*. at 678 (quoting *Twombly*, 550 U.S. at 557). The plausibility standard "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the defendant's liability. *Twombly*, 550 U.S. at 556. But if allegations are indeed more conclusory than factual, then the court does not have to assume

their truth.  *See Mamani v. Berzain*, 654 F.3d 1148, 1153-54 (11th Cir. 2011).

## DISCUSSION

**A.**  **Standing**

BGT argues Plaintiff lacks standing for two reasons.  First, BGT asserts Plaintiff lacks standing to bring suit as a CM because he was not appointed pursuant to an action brought by the Securities & Exchange Commission, but instead was appointed by a Florida State Court based on an unopposed motion and subsequent agreed order. According to BGT, because Plaintiff is not a receiver appointed in a Florida dissolution action under Fla. Stat. § 60.4492, or appointed in a federal dissolution action under 15 U.S.C. § 78u(d)(5), the state court's extension of ancillary powers for equitable relief is improper.  BGT cites no authority for the proposition that there is a legal prohibition barring a state court from appointing a corporate monitor.

By this argument, BGT is essentially requesting the Court review the validity of the state court's order appointing the corporate monitor, which the Court will not do. BGT fails to cite any legal authority for its position that the state court order is void or otherwise not legitimate.  The Complaint attaches the Order appointing the CM and it specifically gives him the power "[t]o pursue, resist and defend all suits, actions, claims and demands which may now be pending or which may be brought by or asserted against OM Global."  DE 1-1, ¶ H.  It furthermore gives him "all powers, authorities, rights and privileges heretofore possessed by the managing members of

OM Global . . ."  DE 1-1, ¶ 10.  Moreover, the SEC filed a 12 count complaint, styled *Securities & Exchange Comm'n v. OM Investment Mgmt. LLC, Gignesh Movalia and Edwin V. Gaw*, Case No. 13-CV-23486-Martinez, (the "SEC action"), where the CM is mentioned as being appointed and where defendants are accused of illegal behavior that was not disclosed to the CM.  *See*, DE 26, Ex. A (SEC's Complaint, ¶¶ 2-3).  On a facial attack to subject matter jurisdiction, these well-pled allegations must be accepted as true.  Absent controlling or persuasive authority, the Corporate Monitor has standing to sue BGT on behalf of OM Global.  *See, supra* note 1; *see, also, Sallah v. Fahrenheit Venture Fund LLC,* 2014 WL 12629450, at *3 (S.D. Fla. 2014).

BGT's second argument asserts that the CM lacks standing because the claims are investor-owned, and he was not an investor and has not been assigned claims by investors.  DE 17 at 7-8.  Plaintiff responds that the damages were to the OM Global hedge fund, and the fact that one of the CM's duties is to repay the victims for their investment losses does not change the fact that the entity OM Global suffered damages directly.

The CM acknowledges that he cannot pursue claims owned directly by the creditors, but he correctly states that he may bring actions previously owned by the party in the monitorship for the benefit of creditors.  *See Freeman v. Dean Witter Reynolds, Inc.*, 865 So.2d 543, 550 (Fla. Dist. Ct. App. 2003); *Obermaier v. Arnett*, 2002 WL 31654535, at *3 (M.D. Fla. 2002) quoting *Miller v. Harding*, 248 F.3d 1127 (1st Cir. 2000) ("An equity receiver, like a bankruptcy trustee, has standing for all claims

that would belong to the entity in receivership, and which would thus benefit its

creditors and investors, but no standing to represent the creditors and investors in

their individual claims.").  Here, the CM's claims are based on monetary damages

allegedly caused by BGT and incurred by the monitorship entity - OM Global.  The

allegations, which must be accepted as true, are:

> BGT was the Fund Administrator for OM Global Investment Fund LLC
> (also the "Fund" herein), which caused **damages to the Fund** because it
> failed to do its job as discussed below. (Compl. ¶ 10) (emphasis added).

> Movalia was losing millions of dollars in the trading accounts, which
> ultimately totaled approximately **$9 million in net losses to the Fund**.
> (Compl. ¶ 42) (emphasis added).

> BGT failed to do its job and, as a result, **the Fund ultimately suffered
> millions of dollars in damages**. (Compl. ¶ 49) (emphasis added).

> BGT had the access, the ability, and the duty to stop the **massive losses
> suffered by the Fund**.  Simply put, BGT could have prevented the OM
> Global tragedy and the **catastrophic damages to the Fund** (and
> ultimately to investors) had BGT done its job. (Compl. ¶ 63) (emphasis
> added).

> BGT, as the Fund Administrator, is responsible for the millions of dollars
> in **losses suffered by the Fund**. (Compl. ¶ 64) (emphasis added).

Other allegations in the Complaint also establish that the claims are brought on

behalf of and for the benefit of the entity.  *See* Compl. ¶¶ 13, 73, 82, 86.  Nowhere in

the Complaint is there a suggestion that the case is being brought "on behalf of the

investors."  Therefore, the Court rejects BGT's assertions that the Complaint seeks to

recover damages solely for the benefit of OM Global's investors, and not OM Global in

whose shoes the CM stands.  Accordingly, the Court concludes that the CM has

standing to pursue this case.  *Obermaier v. Arnett,* 2002 WL 31654535, at *4 (M.D.

Fla. 2002).  Having thus disposed of the preliminary matter of standing, the Court

turns to the merits.

**B.**     **Failure to State a Claim**

**Count I:  Breach of Fiduciary Duty**

A plaintiff bringing a breach of fiduciary duty[5] cause of action must prove:  the

existence of a fiduciary duty, a breach of that duty, and damages proximately caused

by the breach.  *Living Color Enterprises, Inc. v. New Era Aquaculture, Ltd.,* 2015 WL

1526177, at *6 (S.D. Fla. 2015) citing *Silver v. Countrywide Home Loans, Inc.,* 760 F.

Supp. 2d 1330, 1338 (S.D. Fla. 2011), *aff'd,* 2012 WL 2052949 (11th Cir.2012);

*Crusselle v. Mong,* 59 So.3d 1178, 1181 (Fla. Dist. Ct. App. 2011).  BGT asserts that

the Complaint fails to plead the existence of a fiduciary duty, as well as fails to

establish that BGT's actions were the proximate cause of Plaintiff's damages.

*"Special Circumstances"*

Effectively acknowledging that an *express* fiduciary relationship between BGT

and OM Global does not exist, Plaintiff asserts that he has sufficiently alleged an

*implied* fiduciary relationship based on the discretionary services BGT undertook that

---

[5]  A fiduciary owes to its beneficiary the duty to refrain from self-dealing, the
duty of loyalty, the overall duty to not take unfair advantage and to act in the best
interest of the other party, and the duty to disclose material facts.  *Capital Bank v.
MVB, Inc.,* 644 So.2d 515, 520 (Fla. 3d DCA 1994).  The fiduciary must act as a prudent
person with reasonable care, skill, and caution.   Fla. Stat. § 736.0804.

were beyond the scope of the Engagement Letter.  "BGT undertook Facebook services and duties beyond those assumed under the Engagement Letter thereby alleging 'special circumstances'" that transformed BGT's role as a non-fiduciary arms-length fund administrator into a fiduciary with a duty to disclose.  *See* Compl. ¶¶ 18-22.

"An implied fiduciary relationship may be found based on special circumstances surrounding the transaction and the relationship of the parties, and may be found when confidence is reposed by one party and a trust accepted by the other."  *Bruhl v. Price WaterhouseCoopers Intern.*, 2008 WL 899250, at *2 (S.D. Fla. 2008) (Marra, J.)(citations omitted); *Maxwell v. First United Bank,* 782 So.2d 931, 933-34 (Fla. Dist. Ct. App. 2001); *Lanz v. Resolution Trust Corp.,* 764 F.Supp. 176, 179 (S.D. Fla. 1991) (fiduciary relationship is recognized under Florida law when there is a showing of dependency by one party and some undertaking by the other party to advise, counsel and protect that party).

 In *Capital Bank v. MVB, Inc.*, 644 So.2d 515 (Fla. Dist. Ct. App. 1994), Anthony Battaglia, one of his companies, and a subsidiary of his company, MVB, were customers of Capital Bank.  Tellason Products, Inc. was also a customer of the bank. A loan officer at the bank induced Battaglia, on behalf of MVB, to purchase Tellason's assets knowing that Tellason was on the verge of bankruptcy and that the equipment was defective and malfunctioning.  After the purchase, the equipment continuously malfunctioned, resulting in MVB not being able to produce its products timely.  MVB sued Capital Bank for breach of fiduciary duty arguing that the loan officer induced

Battaglia to purchase Tellason's assets so that the bank would not bear the loss of Tellason's non-performing loans.

"Special circumstances" in *Capital Bank v. MVB, Inc.*, 644 So.2d 515 (Fla. Dist. Ct. App. 1994) were found to transform the bank's traditional status as a non-fiduciary arms-length lender into a fiduciary with a duty to disclose. This transformation occurred, and Capital Bank was found to have breached its fiduciary duty, when Capital Bank facilitated a transaction between two of its customers, it expressly invited a customer's reliance by urging the customer to trust that the bank's plans would benefit his business, it possessed confidential information about each customer, and it failed to disclose material information to the customer which failure resulted in the customer suffering harm. *Capital Bank*, 644 So.2d at 521.

Similarly, in *Barnett Bank of West Florida v. Hooper*, 498 So.2d 923 (Fla. 1986), Dr. Hooper and Mr. Hosner were customers at Barnett Bank. After learning that Mr. Hosner was possibly involved in a check kiting scheme, a loan officer at the bank encouraged Dr. Hooper to invest money with Mr. Hosner. As a result, Dr. Hooper borrowed $90,000.00 from the bank and the proceeds of the loan were deposited into Mr. Hosner's account. A few days later, Mr. Hosner's check kiting scheme was confirmed, and as a result of Dr. Hooper's deposit, the bank was able to zero out Mr. Hosner's account. Without Dr. Hooper's deposit, the bank would have lost $87,000.00. Dr. Hooper sought cancellation of the $90,000.00 promissory note arguing that he had established a fiduciary relationship with the bank, and that as a result, the bank had

a duty to disclose knowledge of Mr. Hosner's fraudulent activity. The Florida Supreme

Court noted that the usual relationship between a bank and its depositor is one of

debtor to creditor, not ordinarily imposing a duty of disclosure upon the bank, . . ."

*Barnett Bank*, 498 So.2d at 925 (citations and footnote omitted). However, the

Florida Supreme Court held

> where a bank becomes involved in a transaction with a customer with
> whom it has established a relationship of trust and confidence, and it is
> a transaction from which the bank is likely to benefit at the customer's
> expense, the bank may be found to have assumed a duty to disclose
> facts material to the transaction, peculiarly within its knowledge, and
> not otherwise available to the customer.

*Barnett Bank*, 498 So.2d at 925.

In a similar case involving a receiver's claim for breach of fiduciary duty

against a fund administrator, this Court rejected the receiver's argument that he

sufficiently alleged "special circumstances"  to satisfy the stringent standard under

*Capital Bank v. MVB, Inc.,* 644 So.2d 515 (Fla. Dist. Ct. App. 1994). *See Court*

*Appointed Receiver of Lancer Offshore, Inc. v. Citco Group Ltd.*, 2011 WL 1233106, at

*7-8 (S.D. Fla. 2011) ("*Lancer*"). In *Lancer*, this Court rejected the receiver's

argument that the fund administrator's role was transformed from a ministerial one

to that of a fiduciary even though he alleged that the fund (i) volunteered to assist

the hedge fund manager in restructuring the funds' holdings; (ii) controlled the

employees who served as directors of the funds, and thus directly influenced the

funds' management, activities, and direction; and (iii) received direct payment tied

to the inflated NAV of the funds.  The Court concluded that special circumstances were not adequately alleged because it was not alleged that the fund administrator fostered the fund's confidence beyond what would be expected pursuant to the Agreements, or that the funds placed trust and reliance on the fund administrator beyond the contractual agreements.  *Lancer* at *8 citing *Maxwell v. First United Bank*, 782 So.2d 931, 933-34 (Fla. Dist. Ct. App. 2001).

Plaintiff urges the Court to find that BGT stepped out of its arms-length contractual role when "BGT undertook the Facebook duties beyond the scope of the Engagement Letter, *see* Compl. ¶¶ 18-22, . . . [and] OM Global placed its trust and confidence in BGT for the Facebook transactions, and had superior knowledge and access to all fund financial transactions and activities.  *See* Compl. ¶¶ 23-24, 50, 68-72."  DE 26 at 16.  As far as alleging that confidence was reposed by BGT and OM Global accepted and acted upon that trust, the Complaint is lacking specific facts. The extent of the Complaint's allegations in this respect are as follows:  that BGT "repeatedly gain[ed] the Fund's trust based on BGT's purported expertise and skill, and expectation that the Fund would rely on its services (Compl. ¶ 23(i)), and that "OM Global Investment Fund LLC reposed trust and confidence in BGT, and BGT had domination and influence over OM Global Investment Fund LLC" (Compl. ¶ 69).

Simply stating that OM Global "placed its trust and confidence" in BGT is more conclusory than factual, and merely reiterates a formulaic recitation of critical elements that need to be described before the Court takes the extraordinary step of

transforming a non-fiduciary arms-length relationship into a relationship with fiduciary responsibilities. As stated in the standard of review, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Factual allegations that are "'merely consistent with' a defendant's liability" fall short of being facially plausible. *Id*. at 678 (quoting *Twombly*, 550 U.S. at 557). When allegations are more conclusory than factual, the court does not have to assume their truth. *See Mamani v. Berzain*, 654 F.3d 1148, 1153-54 (11th Cir. 2011).

Here, the CM is seeking to transform a typical non-fiduciary arms-length relationship into an implied relationship with fiduciary responsibilities. This may be done,if there are sufficient factual allegations explaining how BGT fostered OM Global's confidence and how OM Global placed trust and reliance on BGT. The CM argues at length that because BGT performed discretionary duties and assumed responsibilities outside of the Engagement Letter, that the complaint satisfies the "special circumstances" requirement. *See, e.g.*, DE 26 at 13-16. "The emails from 2011 to 2013, which are summarized in the Complaint . . . will prove that BGT was providing discretionary services." DE 26 at 4, 5, 7. Merely providing discretionary services is insufficient. The cases that have transformed a non-fiduciary relationship into a fiduciary one are based on factual allegations that indicate, for instance, that the relationship was created, induced, or encouraged by the defendant, the

defendant involved itself in the transactions between the plaintiff and another, and the defendant benefitted from those transactions at the expense of plaintiff. *See Barnett Bank*, 498 So.2d at 925, *Capital Bank*, 644 So.2d at 518-19. There are no such allegations in the instant complaint, despite the fact that CM states he has years of emails exchanges between OM Global and BGT.

It is appropriate to dismiss a count in a complaint if no construction of the factual allegations support the cause of action. *Executive 100, Inc. v. Martin County,* 922 F.2d 1536 (11th Cir. 1991). In this case, there are no factual allegations that support the suggestion that OM Global's and BGT's newly fostered relationship in 2011 was created, induced, or encouraged by BGT, or that BGT involved itself in transactions where BGT benefitted from those transactions at the expense of OM Global. The CM will be given another opportunity to attempt to allege sufficient facts to support his claim of a breach of an implied fiduciary duty. Accordingly, the motion to dismiss Count I will be granted without prejudice.

### Proximate Cause

BGT argues that Plaintiff does not allege proximate causation between BGT's alleged misconduct and damages to OM Global. BGT also argues that it did not know about Mr. Movalia's misconduct until well after-the-fact and could not have stopped the misconduct, so BGT could not have proximately caused damages. Plaintiff correctly responds that a clear reading of paragraphs 49, 52, and 73 show sufficient allegations that BGT's misconduct proximately damaged OM Global. Moreover when

BGT learned of Movalia's wrongful conduct goes beyond the four corners of the complaint and cannot be considered on a motion to dismiss.

## Count II: Aiding and Abetting Breach of Fiduciary Duty

A claim for aiding and abetting a breach of fiduciary duty requires: (1) a fiduciary duty on the part of the primary wrongdoer (in this case, Mr. Movalia); (2) a breach of this fiduciary duty; (3) knowledge of the breach by the alleged aider and abettor; and (4) the aider and abettor's substantial assistance or encouragement of the wrongdoing. *Lancer* at *9 citing *In re Caribbean K Line, Ltd.*, 288 B.R. 908, 919 (S.D. Fla. 2002); *AmeriFirst Bank v. Bomar*, 757 F.Supp. 1365, 1380 (S.D. Fla. 1991). To satisfy the substantial assistance element, a plaintiff must allege (1) recklessness and a duty to disclose and/or (2) conscious intent. *Lancer* at *9 citing *Woods v. Barnett Bank of Ft. Lauderdale*, 765 F.2d 1004, 1010 (11th Cir. 1985); *Living Color Enterprises, Inc. v. New Era Aquaculture, Ltd.*, 2015 WL 1526177, at *7 (S.D. Fla. 2015).

The first two elements - a fiduciary duty owed by the primary wrongdoer and a breach of same - are not disputed. What is disputed are the third and fourth elements of the claim, knowledge and substantial assistance by BGT.

Regarding the knowledge element, BGT argues that the Complaint contains no individualized or specific allegations suggesting that BGT had actual knowledge of any misrepresentations made by Movalia to investors. This is correct. The Complaint merely alleges in conclusory fashion that "BGT knew of" Movalia's breaches of

fiduciary duties, without any further elaboration to support this allegation of BGT's knowledge.  *See* Compl. ¶ 79.

 The question of substantial assistance requires an analysis of the kind of assistance BGT allegedly offered to Movalia.  Underlying the "substantial assistance" prong is a single scienter requirement that varies on a sliding scale from "recklessness"  to "conscious intent."  *Court Appointed Receiver of Lancer Offshore, Inc. v. Citco Group Ltd.*, 2008 WL 926513, at *6 (S.D. Fla. 2008) citing *Abbott v. Equity Group, Inc.*, 2 F.3d 613, 621 (5th Cir. 1993).  When no duty of disclosure is alleged, an alleged aider-abettor may be found liable only if scienter of the high "conscious intent" variety can be shown.  *Id.* citing *Woodward v. Metro Bank of Dallas*, 522 F.2d 84, 97 (5th Cir. 1975).  If it is alleged that a defendant has a duty to disclose, liability could be imposed if he acts with a lesser degree of scienter.  *Woods v. Barnett Bank of Ft. Lauderdale*, 765 F.2d 1004, 1010 (11th Cir. 1985).

BGT argues that the CM's allegation that it had a non-contractual duty to disclose Movalia's fraud to investors is a bare legal conclusion.  The Court agrees, especially given that the Court previously concluded that the allegations are insufficient to establish a fiduciary relationship between OM Global and BGT.  Accordingly, the Court will evaluate this count solely on the basis of whether it alleges "high conscious intent" and a "conscious and specific motivation"  to aid the fraud.  *Court Appointed Receiver of Lancer Offshore, Inc. v. Citco Group Ltd.*, 2008 WL 926513, at *6 (S.D. Fla. 2008) citing *Schatz v. Rosenberg*, 943 F.2d 485, 496 (4th

Cir.1991); *Abell v. Potomac Ins. Co.*, 858 F.2d 1104, 1126-27 (5th Cir. 1988); *In re Enron Corp. Securities, Derivative & "ERISA" Litigation*, MDL No. 1446, 2005 WL 5784354, *28 (S.D. Tex. Feb.16, 2005).

## High Conscious Intent

The CM refers to paragraph 79 again as containing allegations sufficient to establish that BGT acted with conscious intent. However, the Court just concluded that this paragraph merely alleges in conclusory fashion that "BGT knew of" Movalia's breaches of fiduciary duties, without any further elaboration to support this allegation. The Court finds that this allegation fails to allege the requisite degree of scienter sufficiently. Moreover, red flags or aroused suspicions do not constitute actual awareness of one's role in a fraudulent scheme. *Bruhl*, 2007 WL 983263, at *10. Furthermore, when no duty to disclose exists, "allegations that a defendant knew of the wrongdoing and did not act fail to state an aiding and abetting claim." *Schatz*, 943 F.2d at 496. Therefore, for having failed to adequately allege the elements of knowledge or substantial assistance on the part of BGT as required by the aiding and abetting cause of action, the Court will grant the motion to dismiss Counts II without prejudice.

## Count III:  Negligence

"To succeed on a negligence claim in Florida, Plaintiff must 'show that the defendant owed a duty of care to the plaintiff, that the defendant breached the duty, that the breach caused plaintiff's injury, and that damages are owed.'" *Miles*

*v. Naval Aviation Museum Foundation, Inc.*, 289 F.3d 715, 722 (11th Cir. 2002) citing

*Ewing v. Sellinger*, 758 So.2d 1196, 1197 (Fla. Dist. Ct. App. 2000).  BGT argues that

the Complaint fails to allege a duty owed by BGT to OM Global, that it fails to allege

a breach of any duty allegedly owed by BGT, and that the Engagement Letter

precludes the negligence count.  The Court disagrees and finds that the Complaint

sufficiently alleges that as the Fund Administrator, BGT had duties of care to

administer the Fund in accordance with the purpose of the Fund and investors'

investments (¶ 84), that BGT breached those duties when it knew or should have

known that Movalia was committing all sorts of fraud but failed to disclose anything

to anyone (¶ 85), and that as a direct and proximate result of such failure, OM Global

suffered damages.  This is sufficient.

Moreover, the Engagement Letter does not preclude the negligence count,

because the Complaint clearly alleges that BGT's misconduct was separate and apart

from, and thus not covered by or founded upon the Engagement letter.  Compl. ¶¶

18-22.  Therefore, the Engagement Letter is not a basis for dismissing the negligence

claim.

### *In Pari Delicto*

Next, BGT argues that all claims fail because of the defense of *in pari delicto*.[6]

---

[6] The Latin phrase "*in pari delicto*" means "of equal fault ."  *Perma Life Mufflers, Inc. v. Int'l Parts Corp.*, 392 U.S. 134, 135 (1968).  "This common law defense "derives from the Latin, *in pari delicto potior est conditio defendentis*: 'In a case of equal or mutual fault ... the position of the [defending] party ... is the better

Under this doctrine, a plaintiff who has participated in the wrongdoing may not recover damages resulting from the wrongdoing. *Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards,* 437 F.3d 1145, 1152 (11th Cir. 2006). BGT contends that pursuant to the equitable doctrine of *in pari delicto*, Mr. Movalia's fraud cannot be separated from the acts of the Fund and must be imputed to OM Global and the CM.

In pari delicto is an affirmative defense requiring proof of facts by the defendant; therefore, it is typically not appropriate for Rule 12(b)(6) dismissal. *Pearlman v. Alexis*, No. 09-20865, 2009 WL 3161830, at *3 (S.D. Fla. 2009); *Banco Industrial de Venezuela, C.A. v. Credit Suisse*, 99 F.3d 1045, 1050 (11th Cir. 1996). Moreover, just because "a receiver receives his or her claims from the entities in receivership, a receiver does not always inherit the sins of his predecessors." *Freeman v. Dean Witter Reynolds, Inc.*, 865 So.2d 543, 550 (Fla. Dist. Ct. App. 2003). A receiver may bring certain claims "that would be barred by the defense of *in pari delicto* if pursued by the corporation that was placed in receivership." *Id*. Specifically, a corporation which has been "cleansed" through receivership "may bring claims directly against the principals or the recipients of fraudulent transfers of corporate funds to recover assets rightfully belonging to the corporation and taken

---

one.'" *Id*. quoting *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299 (1985). The doctrine of *in pari delicto* is based on the policy that "courts should not lend their good offices to mediating disputes among wrongdoers" and "denying judicial relief to an admitted wrongdoer is an effective means of deterring illegality." *Id*.

prior to the receivership." *Id.* at 551; *Sallah ex rel. MRT LLC v. Worldwide Clearing LLC,* 860 F. Supp. 2d 1329, 1336 (S.D. Fla. 2011).The Court rejects this defense as a basis for dismissal at this stage of the proceedings.

BGT's final argument is that the Complaint must be dismissed because it is barred by the economic loss rule. However the economic loss rule is dependent on a breach of contract theory. *Tiara Condo Ass'n Inc. v. Marsh & McClennan Companies, Inc.*, 110 So.3d 399, 407 (Fla. 2013). Here, Plaintiff has alleged that BGT's misconduct was separate and apart, and thus not covered by or founded upon, the Engagement Letter, but rather imposed by law. Accordingly, this argument is rejected.

Therefore, in accordance with the conclusions reached herein, it is hereby

**ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss Plaintiff's Complaint [DE 17] is granted in part and denied in part. Counts I and II are dismissed without prejudice. Count III is not dismissed. It is further

**ORDERED AND ADJUDGED** that Defendant BGT Consulting, LLC's Request for Hearing on its Motion to Dismiss [DE 31] is denied.

Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely granted when justice so requires." Therefore, in accordance with the usual practice upon granting a motion to dismiss, if the CM believes, in good faith, that he can make factual allegations that support Counts I or II as discussed herein, he may file an Amended Complaint on or before July 14, 2017. Otherwise, this case should

proceed on the single count of negligence.

        **DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County,

Florida, this 29th day of June, 2017.

                                        _____
                                          KENNETH A. MARRA
                                          United States District Judge